UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE RETIREMENT PLAN OF THE NATIONAL RETIREMENT FUND, and THE BOARD OF TRUSTEES OF THE NATIONAL RETIREMENT FUND,
Plaintiffs,

v.

LACKMANN CULINARY SERVICES, INC.; LACKMANN FOOD SERVICE AT OLD COUNTRY ROAD, INC.; CUSTOM PLANNING SERVICES, INC.; LACKMANN FOOD SERVICE AT BROOKVILLE, INC.; LACKMANN FOOD SERVICE AT WOODBURY, INC.; LACKMANN MANAGEMENT AT LOCUST VALLEY, INC.; LACKMANN FOOD SERVICE, INC.; LACKMANN MANAGEMENT AT MANHATTAN, INC.; LACKMANN MANAGEMENT AT QUEENS, INC.; LACKMANN FOOD SERVICE AT REGO PARK, INC.; LACKMANN FOOD MANAGEMENT AT FIRST AVENUE, INC.; LACKMANN PERSONNEL, INC.; LACKMANN FOOD SERVICE AT 41ST STREET, INC.; LACKMANN FOOD SERVICE AT NASSAU, INC.; LACKMANN FOOD MANAGEMENT OF NEW JERSEY, INC.; LACKMANN FOOD SERVICE OF BROOKLYN, INC.; AND LACKMANN MANAGEMENT OF FLORIDA, INC. and JOHN DOES 1-30 (all other trades or businesses under common control with Lackmann Culinary Services, Inc.),
Defendants.

**MEMORANDUM DECISION**

7:10-cv-06316 (VB)

Briccetti, J.:

Plaintiffs, the Retirement Plan of the National Retirement Fund (the "Fund"), and the Board of Trustees of the National Retirement Fund, bring this action against defendants

Lackmann Culinary Services, Inc. ("Lackmann Culinary") and Lackmann Food Service At Old Country Road, Inc. ("Lackmann Old Country"); Custom Planning Services, Inc.; Lackmann Food Service at Brookville, Inc.; Lackmann Food Service at Woodbury, Inc.; Lackmann Management at Locust Valley, Inc.; Lackmann Food Service, Inc.; Lackmann Management at Manhattan, Inc.; Lackmann Management at Queens, Inc.; Lackmann Food Service at Rego Park, Inc.; Lackmann Food Management at First Avenue, Inc.; Lackmann Personnel, Inc.; Lackmann Food Service at 41st Street, Inc.; Lackmann Food Service at Nassau, Inc.; Lackmann Food Management of New Jersey, Inc.; Lackmann Food Service of Brooklyn, Inc.; and Lackmann Management of Florida, Inc., alleging defendants failed to pay withdrawal liability pursuant to Section 4219 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461, amended by the Multiemployer Pension Plan Amendment Act of 1980 ("MPPAA"), 29 U.S.C. §§ 1381-1461.

For the reasons set forth below, plaintiffs' motion for summary judgment (Doc. #32) is GRANTED.

**BACKGROUND**

The parties have submitted briefs, stipulations of facts, and supporting exhibits, which reflect the following factual background.

The Fund is a multiemployer pension plan within the meaning of ERISA, 29 U.S.C. §§ 1002(37), 1301(a)(3). The trustees are the "plan sponsors" of the Fund. Id. § 1002(16)(B)(iii). Defendant Lackmann Culinary was a food services contractor, wholly owned by defendant Lackmann Old Country. As of July 1, 2009, the other Lackmann defendants were also wholly owned by Lackmann Old Country. Lackmann Culinary was a contributing employer to the Fund

pursuant to a series of collective bargaining agreements.  On July 1, 2009, Lackmann Culinary sold substantially all its assets and withdrew from, or ceased contributing to, the Fund.

By letter dated December 23, 2009, plaintiffs notified Lackmann Culinary that the sale of its assets constituted complete withdrawal from the Fund as of July 1, 2009, and demanded payment of withdrawal liability[1] in the estimated amount of $2,258,000.00, pursuant to a payment plan of forty-two quarterly installments of $75,086.00, starting on February 21, 2010, with a final payment of $25,652.00.  Lackmann Culinary received the December 23 letter on December 29, 2009.  It did not request review of the withdrawal liability assessment set forth in the December 23 letter.  Lackmann Culinary failed to pay the Fund its first quarterly installment of $75,086.00 by February 21, 2010.  Plaintiffs notified Lackmann Culinary, by letter dated March 22, 2010, that it was delinquent in its withdrawal liability payments, and that if the delinquency was not cured within sixty days, Lackmann Culinary would be in default under ERISA and the full amount of Lackmann Culinary's withdrawal liability plus accrued interest would become due.  Lackmann Culinary received the delinquency notice on March 25, 2010.  To date, Lackmann Culinary has not made any payments to the Fund.

Plaintiffs performed a final calculation of Lackmann Culinary's withdrawal liability and revised the total amount to $2,369,081.00.  Plaintiffs commenced the instant action on August 23, 2010, and set forth the revised amount of withdrawal liability in its complaint against Lackmann Culinary.  By letter dated November 22, 2010, Lackmann Culinary (1) noted that the complaint constituted insufficient "notice" of withdrawal liability, (2) challenged the amount of alleged liability set forth in the complaint, and (3) formally requested the Fund review its

---

[1] As set forth below, ERISA "requires that an employer withdrawing from a multiemployer pension plan pay a fixed and certain debt to the pension plan."  Pension Benefit Guar. Corp. v. R.A. Gray & Co., 467 U.S. 717, 725 (1984).

determination of Lackmann Culinary's potential liability under ERISA. On March 21, 2011, plaintiffs sent Lackmann Culinary a letter stating that their December 23, 2009, letter constituted notice of withdrawal liability and therefore Lackmann Culinary's November 22, 2010 request for review was untimely.

Plaintiffs filed the instant motion for summary judgment on April 22, 2011. On May 19, 2011, Lackmann Culinary submitted a demand for arbitration to the American Arbitration Association disputing the adequacy of plaintiffs' withdrawal liability notice and the amount of withdrawal liability contained in the August 23, 2010, complaint.

**DISCUSSION**

A motion for summary judgment must be granted if the pleadings, discovery materials before the court, and any affidavits show that there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A dispute regarding a material fact is genuine if there is sufficient evidence that a reasonable jury could return a verdict for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. Am. Int'l Grp., Inc. v. London Am. Int'l Corp., 664 F.2d 348, 351 (2d Cir. 1981).

If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, then summary judgment is appropriate. Celotex Corp., 477 U.S. at 323. If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met. Liberty Lobby, 477 U.S. at 249. The mere existence of a scintilla of evidence in support of the

nonmoving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for him. See Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the court resolves all ambiguities and draws all permissible factual inferences in favor of the nonmoving party. See Patterson v. County of Oneida, 375 F.3d 206, 218 (2d Cir. 2004). If there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper. See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).

## I. Withdrawal Liability

ERISA "requires an employer that withdraws from a multiemployer pension plan to 'pay a fixed and certain debt to the pension plan,' which represents 'the employer's proportionate share of the fund's unfunded vested benefits, calculated as the difference between the present value of vested benefits and the current value of the plan's assets.'" Barbizon Corp. v. ILGWU Nat'l Ret. Fund, 842 F.2d 627, 629 (2d Cir. 1988) (quoting R.A. Gray & Co., 467 U.S. at 725). It is undisputed that the Fund is a multiemployer plan within the purview of ERISA, Lackmann Culinary was a contractually-bound contributing employer to the Fund, and Lackmann Culinary withdrew from the Fund on July 1, 2009. Thus, Lackmann Culinary will be liable for withdrawal liability payments if plaintiffs complied with the procedural requirements of ERISA and the MPPAA. See Trs. of Amalgamated Ins. Fund v. Steve Petix Clothier, Inc., 2004 WL 67480, at *2 (S.D.N.Y. Jan. 15, 2004).

To succeed on a claim for withdrawal liability payments, a "plan sponsor must: (1) determine that an employer has partially or completely withdrawn from a multiemployer plan;

(2) determine the amount of the employer's withdrawal liability; (3) notify the employer of the amount of liability and the payment schedule; and (4) demand payment according to the schedule." Id. at *2; 29 U.S.C. §§ 1382, 1399(b)(1). Once the employer receives notice, it must begin payment in accordance with the schedule within sixty days, "notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule." 29 U.S.C. § 1399(c)(2). Within ninety days after receiving notice, the employer may ask the plan sponsor to review its liability determination. Id. § 1399(b)(2)(A). If the employer requests review within ninety days, the plan sponsor must, after "reasonable review of any matter raised," notify the employer of the basis for its decision and the reason for any change in its determination of liability or schedule of payments. Id. § 1399(b)(2)(B).

If an employer has "any dispute" concerning the adequacy of the notice or amount of withdrawal liability, the dispute "shall be resolved through arbitration." See id. § 1401(a)(1); Bowers v. Transportacion Maritima Mexicana, S.A., 901 F.2d 258, 262 (2d Cir. 1990); Amalgamated Lithographers of Am. v. Unz & Co., 670 F. Supp. 2d 214, 225 (S.D.N.Y. 2009). The employer must commence arbitration of any dispute by the earlier of (i) 60 days after notification to the employer of the plan sponsor's post-review decision under Section 1399(b)(2)(B), or (ii) 180 days after the date of the employer's request for review under Section 1399(b)(2)(A). See 29 U.S.C. § 1401(a)(1).

If the employer fails to initiate arbitration by the statutory deadline, the amount demanded by the plan sponsor is deemed to be "due and owning" and must be paid in accordance with the schedule provided by the plan sponsor. Id. § 1401(b)(1). Failure to demand arbitration within the statutory time frame bars the employer from contesting liability for the amount demanded. Id. § 1401(a)(1), (b)(1); ILGWU Nat'l Ret. Fund v. Levy Bros. Frocks, Inc.,

846 F.2d 879, 885-87 (2d Cir. 1988). If the employer defaults in making payments pursuant to the schedule set forth in the notice, the plan sponsor may require immediate payment of the entire unpaid amount of the employer's withdrawal liability, plus accrued interest on the total outstanding liability from the date of the first scheduled payment that was not timely made. See 29 U.S.C. § 1399(c)(5); Unz & Co., 670 F. Supp. 2d at 222.

## II. Joint and Several Liability

Under ERISA, all businesses "which are under common control" are treated as a single employer for purpose of withdrawal liability. 29 U.S.C. § 1301(b)(1). ERISA defines common control by reference to the regulations prescribed under Section 414(c) of the Internal Revenue Code. See id. These regulations provide that businesses are under common control if the businesses are members of a "parent-subsidiary" or "brother-sister" groups of businesses. 26 C.F.R. § 1.414(c)-2. Parent-subsidiary corporations are defined as one or more "businesses connected through ownership of a controlling interest with a common parent organization if (i) [a] controlling interest in each of the organizations, except the common parent organization, is owned . . . by one or more of the other organizations; and (ii) [t]he common parent organization owns . . . a controlling interest in at least one of the other organizations, excluding, in computing such controlling interest, any direct ownership interest by such other organizations." Id. § 1.414(c)-2(b). Brother-sister corporations are defined as two or more corporations (i) where the same five or fewer persons own a controlling interest in each organization, and (ii) such persons are in effective control of each organization, taking into account the ownership of each person only to the extent such ownership is identical with respect to each such organization. See id. § 1.414(c)-2(c).

A "controlling interest" is defined as ownership of stock possessing at least 80% of the total combined voting power of all classes of stock entitled to vote of such corporation, or at least 80% of the total value of shares of all classes of stock in such corporation. See id. § 1.414(c)-2(b)(2). "Effective control" is defined as ownership of "stock possessing more than 50% of the total combined voting power of all classes of stock entitled to vote or more than 50% of the total value of shares of all classes of stock of such corporation." Id. § 1.414(c)-2(c)(2)(i). Therefore, a "brother-sister" group of businesses under common control must be controlled by the same five or fewer persons owning at least 80% of the shares of each corporation, with at least 50% of the shareholder's ownership interests in each corporation identical. See id. § 1.414(c)-2.

It is undisputed that Lackmann Old Country owned 100% of Lackmann Culinary and the other Lackmann defendants. As of July 1, 2009, Lackmann Old Country was owned by Kay Lackmann, Andrew Lackmann, Matthew Lackmann, and Susan Lackmann Goldberg, each with a 25% interest. Therefore, defendants constitute businesses under common control within the meaning of ERISA and are each jointly and severally liable for any withdrawal liability amounts assessed against Lackmann Culinary.

## III. Adequacy of Notice

As set forth above, in order to collect withdrawal liability, plaintiffs must have notified defendants of the amount of liability, the schedule for payment of that liability, and the demand for payment in accordance with that schedule. See Unz & Co., 670 F. Supp. at 223. "Notice to one member of the control group is considered as notice to all members." Id.

Plaintiffs contend the December 23, 2009, letter to Lackmann Culinary fulfilled the notice requirements under ERISA, 29 U.S.C. §§ 1382, 1399(b)(1). Defendants argue the December 23 letter did not constitute sufficient notice of withdrawal liability under ERISA

because it did not provide Lackmann Culinary notice of its actual withdrawal liability, but instead merely provided an estimated amount of liability. Defendants claim Lackmann Culinary was given adequate notice only when plaintiffs filed the complaint in this matter, on August 23, 2010, which sets forth the final amount of Lackmann Culinary's withdrawal liability as $2,369,081.00.

Notice of withdrawal liability that includes an estimated amount of liability constitutes adequate and sufficient notice under Section 1399. "Due to the remedial purpose of ERISA and the MPPAA, the MPPAA's notice provisions are liberally construed to protect pension plan participants." Unz & Co., 670 F. Supp. 2d at 224-25. Notice that "substantially complies" with Section 1399 is adequate. Id. at 225; Cent. States, Se. & Sw. Areas Pension Fund v. Basic Am. Indus., Inc., 252 F.3d 911, 918 (7th Cir. 2001). Notice setting forth an estimated amount of withdrawal liability substantially complies with 29 U.S.C. § 1399. See Chi. Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Loyal Casket Co., 2008 WL 938409, at *3 (N.D. Ill. Apr. 7, 2008) (holding that "a withdrawal liability estimate is sufficient to meet the statute's notice requirement"); Unz & Co., 670 F. Supp. 2d at 225; Unite Here Works Pension Fund v. Westchester Lace & Textiles, Inc., 2006 WL 2051107, at *2, *6 n.2 (S.D.N.Y. July 21, 2006) (upholding arbitration decision that employer's arbitration demand was not within the time limits set forth in ERISA where notice contained estimated amount of withdrawal liability); N.Y. State Teamsters Conference Pension & Ret. Fund v. Parlor City Contracting Co., 1997 WL 778677, at *1 (N.D.N.Y. Dec. 8, 1997) (finding a notice setting forth withdrawal liability based upon estimated values was sufficient under ERISA and the MPPAA); see also Trs. of Chi. Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Cent.

Transp., Inc., 888 F.2d 1161, 1163 (7th Cir. 1989) (holding that a notice demanding estimated withdrawal liability was adequate under Section 1399).

Defendants' attempt to distinguish Unz & Co. misses the mark.[2] Defendants argue Unz & Co. is distinguishable because the plaintiff's initial notice in that case contained an exact amount of withdrawal liability, and that any lack of specificity in the notice was rectified by the specificity of another notice sent to a co-employer. In Unz & Co., however, the defendant argued that the notice of withdrawal liability it received in May 2008 was not sufficient because it did not set out the amount of withdrawal liability, schedule for payments, or demand for payment. See Unz & Co., 670 F. Supp. 2d at 224. The court in Unz & Co. found that while the May 2008 letter did not set out any of these items, an earlier (January 2005) undelivered letter – marked "returned to sender" – that was attached to the subsequent May 2008 letter clearly set forth the amount of withdrawal liability, a payment schedule, and a demand for payment, and thus the May 2008 letter constituted sufficient notice. See id. at 225. Moreover, the Unz & Co. court held the May 2008 letter substantially complied with ERISA and MPPAA even though the

[2] Defendants' attempt to distinguish the Northern District of Illinois' decision in Loyal Casket similarly fails. First, defendants argue the holding in Loyal Casket – that estimated withdrawal liability suffices under Section 1399 – was incorrect because the court did not analyze the language of the statute. This conclusory argument is unfounded. The Loyal Casket court clearly set forth the language of Section 1399(b)(1) and analyzed whether estimated withdrawal liability sufficed under the statute. See Loyal Casket, 2008 WL 938409, at *3-4. Second, defendants claim that Loyal Casket is distinguishable because after the pension fund in that case sent its initial notice of estimated withdrawal liability, it sent a second notice setting forth the "final actual amount of liability." However, as defendants admit in their opposition to plaintiffs' summary judgment motion, after plaintiffs in this case sent the December 23 letter containing the estimated withdrawal liability, they subsequently set forth the exact amount of liability in the August 23, 2010, complaint. There are substantial similarities between Loyal Casket and the case at hand, and the Northern District of Illinois' reasoning provides this Court appropriate guidance in navigating a "famously complicated" statute. See Unz & Co., 670 F. Supp. 2d at 222.

schedule set out in the attached undelivered 2005 letter was "a schedule with which it is impossible to comply." Id.

Defendants read the language of Section 1399, which states that the plan sponsor shall notify the employer of "the amount of liability," 26 U.S.C. § 1399(b)(1)(A), as requiring that any notice contain an exact amount of liability. However, as the Unz & Co. court stated, this interpretation is unreasonable. "29 U.S.C. § 1399 requires only that the plan sponsor 'notify' the employer of those three items. The MPPAA does not specify the form that this notification is to take, or mandate a particular template that it must conform to." Unz & Co., 670 F. Supp. 2d at 224.

It is undisputed that plaintiffs' December 23, 2009, letter contained an estimated amount of withdrawal liability, set forth a schedule for payment of that liability, and demanded payment of the liability in accordance with that schedule. Therefore, plaintiffs' December 23, 2009, letter substantially complied with the requirements of ERISA and the MPPAA, and constituted adequate notice of withdrawal liability.

## IV. Arbitration Demand

Defendants' argument that the December 23 letter did not constitute adequate notice under Section 1399 also fails because defendants did not demand arbitration to contest the adequacy of the notice or the amount of the withdrawal liability set forth in that letter. Under ERISA and MPPAA, "any dispute" concerning the adequacy of the notice or amount of withdrawal liability, "shall be resolved through arbitration." See 29 U.S.C. § 1401(a)(1); Bowers, 901 F.2d at 262; Unz & Co., 670 F. Supp. 2d at 225; Unite Here Workers Pension Fund v. Swan Finishing Co., 2006 WL 1341301, at *2 (S.D.N.Y. Feb. 10, 2006).

As stated above, if there is a dispute over the adequacy of notice or the amount of withdrawal liability, the employer has ninety days from notification to request a review by the plan sponsor.  29 U.S.C. § 1399(b)(2)(A).  After timely requesting a review, whether or not the plan sponsor has responded, the employer may initiate arbitration to resolve the dispute within either 180 days after the employer requests review or sixty days after the plan sponsor has responded to the request.  See id. § 1401(a)(1).  To invoke arbitration within either of these timeframes, the employer must first request review by the plan sponsor within ninety days of receiving notice of liability.  See id.; Unz & Co., 670 F. Supp. 2d at 226.

It is undisputed that Lackmann Culinary received plaintiffs' December 23 letter on or about December 29, 2009.  Defendants admit they did not request a review of the December 23 letter or the withdrawal liability it set forth.  Defendants argue they timely requested review on November 22, 2010, of the liability assessment in the August 23, 2010, complaint, and thus timely commenced arbitration on May 19, 2011.  However, the December 23 letter constitutes the notice of liability required by ERISA and the MPPAA.  By failing to request review within ninety days of the receipt of the December 23 letter, defendants forfeited their right to commence arbitration and to contest the amount of liability or the adequacy of the notice.  See Unz & Co., 670 F. Supp. 2d at 226; Levy Bros. Frocks, Inc., 846 F.2d at 887 ("Congress intended that disputes over withdrawal liability would be resolved quickly, and established a procedural bar for employers who fail to arbitrate disputes over withdrawal liability in a timely manner. . . .  The failure to seek such relief on a timely basis may, in some instances, lead to a harsh result, but the harshness of the default is largely a self-inflicted wound." (citations omitted) (internal quotation marks omitted)).

## V. Liability and Damages

The withdrawal liability assessed against defendants became "due and owing" upon defendants' failure to timely commence arbitration. See 29 U.S.C. § 1401(b)(1). The MPPAA establishes a "pay-first-question-later system." Bowers, 901 F.2d at 263. An employer who receives notice of withdrawal liability must start making payments within sixty days, whether or not it challenges the amount of liability. See 29 U.S.C. § 1399(c)(2) ("Withdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor . . . beginning no later than 60 days after the date of the demand notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule."). An employer defaults under Section 1399 if it fails to make a payment when due, or cure that failure within sixty days. Id. § 1399(c)(5). If an employer defaults, the plan sponsor is entitled to demand immediate payment of the remaining unpaid amount of liability plus interest on the total amount outstanding from the first missed payment. Id.; Bowers, 901 F.2d at 265; Unz & Co., 670 F. Supp. 2d at 229-30.

Defendants received notice of withdrawal liability on December 29, 2009. It is undisputed that they have failed to make any payments toward the outstanding withdrawal liability to date. Therefore, defendants are jointly and severally liable for the full amount of withdrawal liability, which plaintiffs have calculated to be $2,369,081.00. See Parlor City Contracting Co., 1997 WL 778677, at *3-4.

Defendants are also jointly and severally liable for interest on the unpaid withdrawal liability, which began accruing from the due date of the first missed payment, February 21, 2010. 29 U.S.C. § 1399(c)(5). Additionally, defendants are liable for reasonable attorneys' fees and costs of the action, and liquidated damages as provided for under the pension plan, not to exceed 20% of the withdrawal liability. Id. §§ 1132(g)(2), 1451(b).

**CONCLUSION**

For the foregoing reasons, plaintiffs' motion for summary judgment (Doc. #32) is GRANTED. Plaintiffs shall provide the Court with a proposed judgment stating a total amount owed by defendants, which shall include a calculation of interest due on the unpaid withdrawal liability, an affidavit of attorneys' fees and costs, and a calculation of liquidated damages, if any.

Dated: July __, 2011
White Plains, New York

SO ORDERED:

______________________________
Vincent L. Briccetti
United States District Judge

**CONCLUSION**

For the foregoing reasons, plaintiffs' motion for summary judgment (Doc. #32) is GRANTED. Plaintiffs shall provide the Court with a proposed judgment stating a total amount owed by defendants, which shall include a calculation of interest due on the unpaid withdrawal liability, an affidavit of attorneys' fees and costs, and a calculation of liquidated damages, if any.

Dated: July 29, 2011
White Plains, New York

SO ORDERED:

Vincent L. Briccetti
United States District Judge